## JULIA A. MINDE v. KARL MINDE.

*Divorce—Extreme cruelty.*

In this case the testimony is held not to warrant a divorce for extreme cruelty.

Appeal from Wayne. (Chambers, J.) Argued April 12, 1887. Decided April 28, 1887.

Bill for divorce. Defendant appeals. Decree reversed and bill dismissed. The facts are stated in the opinion.

*John G. Hawley* (*Edmund F. Haug,* of counsel), for complainant.

*Otto Kirchner,* for defendant.

CHAMPLIN, J. Complainant asks for a divorce from defendant upon the ground of extreme cruelty. The parties were married in February, 1870, and lived together until about May 5, 1886. They have one child, a daughter, who was 14 years of age at the time of filing the bill.

The cruelty alleged consists in his scolding her without just cause or provocation; calling her names such as old goat, old cow; telling her he could find a better woman in a ditch; accusing her of stealing his money; telling her he was tired of her, and had no further use for her; that she could go home to her father, with her long nose, and he could set her up at the street corner for a show. This period of extreme cruelty is alleged to have extended back for a period of five years last past, and that during that period he has often made such a noise in the house with his scolding and quarreling as to disturb the peace of the neighborhood, and during that period he has driven her out of the house more than 50 times, and told her not to come back; that about

three years ago he struck her in the breast with great violence, so as to cause her to spit blood from the effect of the blow.

The defendant answered, denying the acts of cruelty charged; says that frequently during the past year she told defendant that she did not care for him; that he was too old for her; that she was determined to get rid of him, and would do all in her power to obtain that end, and get his money. Proofs were taken in open court before one of the circuit judges for the county of Wayne, who granted a decree for divorce and alimony.

A careful study of the entire record fails to satisfy me that the complainant is entitled to a divorce. She admits that she never loved him, and says that her parents wanted her to marry him, and she acquiesced. She had known him but three weeks. He was much the elder of the two. There are vague hints thrown out in the testimony as to the reasons why the parents desired the marriage, but nothing definite is shown. The testimony, aside from her own, in support of her bill, is extremely weak, and not at all convincing to my mind. He owned the house in which they have resided since their marriage, and he produced the testimony of several of his nearest neighbors to show that he was a quiet, sober, and hard-working man. It appears that he is a day laborer, commanding wages of $1 to $1.50 a day, and out of his earnings he had saved up about $1,800, with which he intended to build a new house. Their union has not resulted in the greatest amount of happiness that could be imagined, but fully as much as is usual to pairs thus mated.

The testimony shows that both have indulged in language which it would have been better to have omitted. Her father, who was sworn in her behalf, testified that she often ran away from him, and at one time witness brought her back by force, and spoke to defendant in a kind way that he should behave himself as a husband could, and try and get along; and he says:

"Then it went well for a long time, and then they lived together same as dogs, biting each other all the time."

The only testimony of violence is that given by complainant, which she says occurred four years ago; that then he struck her on the breast so hard that after it she spit blood. She says it occurred about dusk; that the chickens went to roost upon the vines, and she assisted her husband in removing them; that he was provoked, and struck her. There is an attempt at corroboration by the witness Woelke. He says:

"I never see him strike her directly, only at one time when I was washing myself I seen a blow made, but by the time I turned around the blow had been made, and I could not say exactly who struck. * * * I don't know whether he struck her or not. I only see him make the blow."

There is no evidence to show that this occurred at the grape-vine when they were removing the hens. He was a boarder in the family, and was on friendly terms with complainant, but he heard no complaint of her spitting blood afterwards. Defendant denies that he ever struck her, and she continued to live with him for four years; and, as no other act of violence is shown, it would seem rather late to grant a divorce for that cause.

Without commenting upon the testimony at length, it is sufficient to say that, upon due consideration of it all, I do not think that a divorce should be decreed. I am of the opinion that the decree of the circuit court should be reversed, and the bill of complaint dismissed.

The other Justices concurred.